ELGIN E. RUDD, administrator with the will annexed, *vs.*
VICTOR ALBERT SEARLES & others.

Essex.    November 16, 1927.— March 1, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Devise and Legacy*, Validity, Revocation of legacy if legatee contests.

In a will containing a legacy to an heir at law of the testator, the following
   further provision is valid: "All legacies . . . contained in this will . . .
   are given upon the express condition that the respective legatees . . .
   shall not oppose the probate of this will . . . and if any such legatee
   . . . shall oppose the probate of this Will . . . , then, and in that event,
   I revoke and annul all legacies . . . hereby given to such person . . .
   and I do give . . . the legacy . . . hereby given to such person, and
   thus revoked, unto" an educational institution; and, if the legatee
   opposes probate of the will, whether with or without probable cause,
   and the will is proved, the legacy should be paid to the educational
   institution.

PETITION, filed in the Probate Court for the county of
Essex on November 26, 1923, by Arthur T. Walker, executor
of the will of Edward F. Searles, late of Methuen, for in-
structions.

Material allegations and prayers of the petition are stated
in the opinion.

The petition was heard by *Dow*, J., a stenographer having
been appointed under the provisions of G. L. c. 215, § 18, to
take the evidence.    The judge found that "Victor A. Searles
opposed the probate of said will of said Edward F. Searles
within the meaning of the twenty first article of said will and
that his said opposition was without probable cause," and
by his order a final decree was entered "that thereby the
legacy given to said Victor A. Searles under said fourth
article of said will is revoked and annulled and that the
petitioner be instructed that said legacy should be paid to
The Regents of The University of California for the use
and benefit of the University of California."    Victor Albert
Searles, Sherman L. Whipple, and Lothrop Withington,
respondents, appealed.

While the appeals were pending in this court, the executor

died and Elgin E. Rudd was appointed administrator with the will annexed of the estate not already administered, and was admitted to prosecute as petitioner.

*J. Connolly*, stated the case.

*James J. Ronan*, (*R. A. B. Cook* with him,) for the respondents Searles and others.

*C. F. Choate, Jr.*, (*M. Donald* with him,) for the respondents The Regents of the University of California.

RUGG, C.J. By clause Fourth of the will of Edward F. Searles, a legacy of $250,000 was given to Victor A. Searles. In clause Twenty-first of the will were these words: "All legacies . . . contained in this will . . . are given upon the express condition that the respective legatees . . . shall not oppose the probate of this will . . . and if any such legatee . . . shall oppose the probate of this Will . . . , then, and in that event, I revoke and annul all legacies . . . hereby given to such person . . . and I do give . . . the legacy . . . hereby given to such person, and thus revoked, unto The Regents of The University of California . . . ." Victor A. Searles, who was also the heir at law of the testator, confessedly opposed the probate of the will. As a consequence of his opposition, a settlement was made between him and the residuary legatee and devisee under the will, whereby the latter, out of the benefactions accruing to him under the will, paid a sum in excess of $4,000,000 to the opposing legatee, the opposition was withdrawn and the will was admitted to probate. An agreement in writing was made between these two, to which those named as executors in the will were not parties, whereby, among numerous other matters including a withdrawal of all objections to the probate of the will, it was stipulated "that nothing herein contained shall be construed as a release" by the opposing legatee "of such right if any as he may possess to receive the legacy of two hundred and fifty thousand (250,000) dollars bequeathed to him by the fourth article of said will." Claim to this legacy is made by such opposing legatee and by The Regents of the University of California. The executors of the will bring this petition for instructions to whom to pay this legacy.

A decisive question presented is whether clause Twenty-first of the will, to the effect that the legacy to any legatee opposing the probate of the will shall be revoked and annulled and given over to another, is valid. That question has never arisen for decision in this court.

The will before the court in *Parsons* v. *Winslow*, 6 Mass. 169, contained a legacy in trust for the benefit of the widow of the testator during her life on condition of being void in the event of her marrying. It there was said at page 178, "When the condition is subsequent, as this is, *and the legacy is not given over*, it is considered merely *in terrorem*, and the condition is void, because it puts a restraint upon matrimony, which ought not to be discouraged. But if the legacy be given over, the limitation may take effect." As to restraint upon remarriage by a widow, that decision is no longer the law. *Knight* v. *Mahoney*, 152 Mass. 523, 525. Notwithstanding its strong intimation as to the validity of a testamentary provision like the present, we do not rest our decision upon it. In *Sackett* v. *Mallory*, 1 Met. 355, a devise was made to two sons of the testator, but upon condition that no claim should be made by either upon the estate of the testator. One of the sons made a claim upon the estate of the testator, which was recognized as valid and paid by the executors. It was held that thereby the bequest to that son was forfeited by this breach of condition. This case, although approaching somewhat to the question here presented, is not decisive. The doctrine of election in principle comes close to the case at bar. That doctrine prevails in this Commonwealth. It is in substance that, if one takes a beneficial interest under a will, he thereby shall be held to confirm and ratify every other part of the will; he cannot accept a benefit under any document without conforming to all its provisions and renouncing every right or claim inconsistent with them; he cannot accept in part and reject in part the terms of the same instrument. *Noyes* v. *Noyes*, 233 Mass. 55, 58, 59, and cases there collected and reviewed. That doctrine, although throwing light upon the facts here revealed, is not strictly controlling. The question to be decided is treated on its own merits.

By G. L. c. 191, § 1, "Every person of full age and sound
mind may by his last will in writing," signed and attested
as there specified, "dispose of his property, real and personal"
with certain exceptions.　Those exceptions relate to rights
of the husband and of the wife, of unmentioned and of post-
humous children, to homestead estates, and to estates tail, no
one of which is material to the present issue.　This statute is
plain and unequivocal.　In it there are no words or phrases
of a technical or peculiar legal signification.　Construed
according to the common and approved usage of the lan-
guage, there is nothing obscure or uncertain in its terms.
This power of testamentary disposition, so far as concerns
the case at bar, is unrestricted, unlimited, and subject to no
conditions expressed by the words of the statute or implied
from its terms.　Therefore, the question for decision is nar-
rowed to the point whether an exception to the broad sweep
of the statute of wills is to be engrafted upon it by judicial
decision in instances where a legacy or devise is given upon
condition that the beneficiary shall not oppose the probate
of the will, on the ground that such a provision is contrary
to any rule of law or to public policy.

No rule of positive law has been suggested in argument,
and we are not aware of any, which forbids the clause here
in issue.　There is a clear gift over in the event that the
legacy is forfeited by opposition to the probate of the will.
The contention put forward is that a testamentary clause
of this nature is contrary to public policy in those instances
where the beneficiary had probable cause for contesting the
will.　This contention requires careful consideration.　We
examine the authorities first.　The question arose in *Cooke*
v. *Turner*, 14 Sim. 493; *S. C.* 15 M. & W. 727.　In holding
valid a testamentary provision revoking a benefaction to a
daughter in the event of contest of the will by her, the court
said: "There is no doubt that, by disputing the will and
refusing to confirm it when required so to do, she has brought
herself, both in letter and in spirit, within the proviso by
which her interest is made determinable; so that her interest
in the whole, is clearly forfeited, unless the proviso itself is
void; and, accordingly, the argument on her behalf, was that

the proviso is bad, as being contrary to the policy of the law. The ground on which the argument against the proviso was made to rest, was that every heir at law ought to be left at liberty to contest the validity of his ancestor's will; and that any restraint, artificially introduced, might tend to set up the wills of insane persons, and would be, in the language of *Shep.* Touchst., page 132, against the liberty of law. We cannot however adopt this reasoning. . . . The conditions said to be void as trenching on the liberty of Law, are those which restrain a party from doing some act which, it is supposed, the State has or may have an interest to have done. The State, for obvious reasons, has an interest that its subjects should marry, and therefore will not, in general, allow parties, by contracts or conditions in a will, to make the continuance of an estate depend on the owner not doing that which it either is or may be the interest of the State that he should do. So the State is interested in having its subjects embarked in trade and agriculture; and, therefore, the law will not give effect to a condition defeating an estate, in case its owner shall engage in commerce, or sow his arable land, or the like. The principle on which such conditions are void, is analogous to that on which conditions defeating an estate, unless the owner commits a crime, are void. In the latter case, the condition has a tendency to induce the violation of a positive duty; in the former, to prevent the performance of what partakes of the character of imperfect obligation. But, in the case of a condition such as that before us, the State has no interest whatever apart from the interest of the parties themselves. There is no duty, either perfect or imperfect, on the part of an heir, to contest his ancestor's sanity. It matters not to the State whether the land is enjoyed by the heir or by the devisee; and we conceive, therefore, that the law leaves parties to make just what contracts and engagements they may think expedient, as to raising or not raising questions of law or of fact among themselves, the sole result of which is to give the enjoyment of the property to one claimant rather than to another." All the earlier English decisions, including *Powell* v. *Morgan,* 2 Vern. 90, and *Morris* v. *Burroughs,* 1 Atk. 398, sometimes thought to support the oppo-

site view, were called to the attention of the court and it must be presumed that they were considered. Other English cases supporting this doctrine are *Cleaver* v. *Spurling,* 2 P. Wms. 526, and *Stevenson* v. *Abington,* 11 Wkly. Rep. 935. See also *Lloyd* v. *Branton,* 3 Meriv. 108. The cases of *Powell* v. *Morgan, supra,* and *Morris* v. *Burroughs, supra,* are imperfectly reported, but in each case apparently there was no gift over in case of forfeiture, a point often emphasized in England as decisive. We do not regard *Loyd* v. *Spillet,* 3 P. Wms. 344, *Rhodes* v. *Muswell Hill Land Co.* 29 Beav. 560, *Warbrick* v. *Varley,* 30 Beav. 347, *Adams* v. *Adams,* 45 Ch. D. 426, *S. C.* on appeal, [1892] 1 Ch. 369, as throwing light upon the question we have to decide. In *Evanturel* v. *Evanturel,* L. R. 6 P. C. 1, 24, the question arose respecting a will in the Province of Quebec, which contained a clause of forfeiture of legacy if contest of the will were made by the legatee. The decision of the question depended upon the terms of the Code Civil, which provided in substance that a testator might "impose upon his gift any condition not prohibited by the Code, and not contrary to law, public order, or good morals." The court then reduced the question to this: "Is this clause contrary to public order, because it is designed to prevent the doing of that which it is against public order to discourage? In considering this question" the court treated "'public order' as identical with what in this country is termed 'public policy,' though the latter is perhaps the larger of the two terms." Thus the court stated the question to be decided as precisely the same as that presented in the case at bar. The court then proceeded, "Upon principle, it is to be observed that the prohibition cannot be absolute, and can be invoked only where the validity of a will has been unsuccessfully contested. If there be a clear and patent defect in the formalities attending the execution of the instrument, or if the incapacity of the alleged testator be clear and notorious, the heirs or other parties interested will, of course, contest the will, and, contesting it successfully, will set it aside with the clause of forfeiture. On the other hand, it is not easy to see why a testator may not protect his estate and represen-

tatives against unsuccessful attempts to litigate his will, by saying to a legatee, 'I, being master of my own bounty, and free to give or to withhold, give you this legacy subject to the condition that you do not dispute the general disposition of my estate. You may contest the validity of my will if you please; but you will do so at the peril of losing, if it be established, what it gives you.'" Upon authority the court held that the whole law in England upon the subject had been considered and put upon a sound foundation by the Court of Exchequer in *Cooke* v. *Turner*, 15 M. & W. 727, to the effect that such a clause was valid. In both these cases apparently there was probable cause to contest the allowance of the will. The result of these decisions appears plainly to be that a clause of forfeiture by legatee or devisee upon contest of the will with gift over is valid under the English law, even though the contest be made upon probable cause.

In *Smithsonian Institution* v. *Meech*, 169 U. S. 398, 399, the will provided that "These bequests are all made upon the condition that the legatees acquiesce in this will and I hereby bequeath the share or shares of any disputing this will to the residuary legatee." The court in its opinion quoted with approval from Roper on Legacies the following: "'When legacies are given to persons upon conditions not to dispute the validity of, or the dispositions in wills or testaments, the conditions are not in general obligatory, but only *in terrorem*. If, therefore, there exist *probabilis causa litigandi*, the non-observance of the conditions will not be forfeitures. *Powell* v. *Morgan*, 2 Vern. 90; *Morris* v. *Burroughs*, 1 Atk. 404; *Loyd* v. *Spillet*, 3 P. Wms. 344. The reason seems to be this: A court of equity does not consider that the testator meant such a clause to determine his bounty, if the legatee resorted to such a tribunal to ascertain doubtful rights under the will, or how far his other interests might be affected by it; but merely to guard against vexatious litigation. But when the acquiescence of the legatee appears to be a material ingredient in the gift, which is made to determine upon his controverting the will or any of its provisions, and in either of those events the legacy is given over to another person, the restriction no longer continues a

condition *in terrorem,* but assumes the character of a conditional limitation.   The bequest is only *quousque,* the legatee shall refrain from disturbing the will; and, if he controvert it, his interest will cease and pass to the other legatee.'"
The court then reviewed *Cooke* v. *Turner,* 14 Sim. 493, and discussed as pertinent the doctrine of election, and concluded in these words: "The propositions thus laid down fully commend themselves to our approval.   They are good law and good morals.   Experience has shown that often after the death of a testator unexpected difficulties arise, technical rules of law are found to have been trespassed upon, contests are commenced wherein not infrequently are brought to light matters of private life that ought never to be made public, and in respect to which the voice of the testator cannot be heard either in explanation or denial, and as a result the manifest intention of the testator is thwarted. It is not strange, in view of this, that testators have desired to secure compliance with their dispositions of property and have sought to incorporate provisions which should operate most powerfully to accomplish that result.   And when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts wisely hold that no legatee shall without compliance with that condition receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes."

The rule of the English cases and of the Supreme Court of the United States is adopted unequivocally by a respectable weight of authority.   *Donegan* v. *Wade,* 70 Ala. 501. *Estate of Miller,* 156 Cal. 119, 121.   *In re Kitchen,* 192 Cal. 384, 389.   *Hoit* v. *Hoit,* 15 Stew. (N. J.) 388, 390.   *Guaranty Trust Co.* v. *Blume,* 92 N. J. Eq. 538.   *Kayhart* v. *Whitehead,* 7 Buch. 12, affirmed in 8 Buch. 580.   *Moran* v. *Moran,* 144 Iowa, 451, 462, 463.   *Bradford* v. *Bradford,* 19 Ohio St. 546.   *Perry* v. *Rogers,* 52 Tex. Civ. App. 594.   *Massie* v. *Massie,* 54 Tex. Civ. App. 617.   A devise of real estate was in question in *Whitehurst* v. *Gotwalt,* 189 N. C. 577, and it was said at page 579 that in such case, "by the clear weight of authority, both in England and in this country, a condi-

tion of forfeiture, if the devisee shall dispute the will, is valid in law"; and at page 580 Redfield on Wills is quoted with approval to the effect that, both as to real and personal estate, "we assume that in this country, any such condition, which is reasonable, as one against disputing one's will surely is, as nothing can be more in conformity to good policy than to prevent litigation, will be held binding and valid." The point does not appear to have been expressly settled by authoritative decision in New York. We think, by way of inference from authoritative adjudications, that such a condition in a testamentary gift must be complied with in order to entitle a party to the enjoyment of the devise or legacy. *Hogan* v. *Curtin*, 88 N. Y. 162, 173. *Matter of Arrowsmith*, 162 App. Div. (N. Y.) 623, 628, affirmed without opinion in 213 N. Y. 704. *Bryant* v. *Thompson*, 59 Hun. 545, 549.

In other jurisdictions in this country an exception to the general rule has been established to the effect that a testamentary clause of forfeiture of benefits by a contesting legatee or devisee shall not be operative in instances where the contest has been undertaken with probable cause and was justifiable in all the circumstances. This exception has been founded in general on the theory that a forfeiture in such case would be contrary to public policy. It is expressed as strongly as anywhere in *South Norwalk Trust Co.* v. *St. John*, 92 Conn. 168, at pages 176, 177: "The exception that a contest for which there is a reasonable ground will not work a forfeiture, stands upon better ground. It is quite likely true that the authorities of greater number refuse to accept this exception, but we think it has behind it the better reason. It rests upon a sound public policy. The law prescribes who may make a will and how.it shall be made; that it must be executed in a named mode, by a person having testamentary capacity and acting freely, and not under undue influence. The law is vitally interested in having property transmitted by will under these conditions, and none others. Courts cannot know whether a will, good on its face, was made in conformity to statutory requirements, whether the testator was of sound mind, and whether the will was the product of undue influence, unless these matters are presented in

court; and those only who have an interest in the will, will have the disposition to lay the facts before the court. If they are forced to remain silent, upon penalty of forfeiture of a legacy or devise given them by the will, the court will be prevented by the command of the testator from ascertaining the truth; and the devolution of property will be had in a manner against both statutory and common law. Courts exist to ascertain the truth and to apply the law to it in any given situation; and a right of devolution which enables a testator to shut the door of truth and prevent the observance of the law, is a mistaken public policy." That proposition is supported by other decisions: *Friend's Estate,* 209 Penn. St. 442; *Drace* v. *Klinedinst,* 275 Penn. St. 266; *Tate* v. *Camp,* 147 Tenn. 137; *Rouse* v. *Branch,* 91 S. C. 111; *In re Chappell's Estate,* 127 Wash. 638; *Dutterer* v. *Logan,* 103 W. Va. 216. The case of *Fifield* v. *Van Wyck,* 94 Va. 557, 563, 564, sometimes cited as in favor of this proposition, appears to us not susceptible of that interpretation, but rather to indicate a purpose to follow the English rule of *Cooke* v. *Turner,* 15 M. & W. 727.

We are of opinion that sounder reason supports the view that the general power to make a will is not subject to the exception that a testamentary provision is void, to the effect that opposition to the allowance of the will undertaken upon probable cause by a beneficiary shall cause forfeiture of the testamentary provisions in favor of such contesting beneficiary where there is a gift over upon such forfeiture. It is universally conceded that a condition in a testamentary gift against contest of the will is not inherently bad. There is nothing contrary to public policy in such a provision standing alone. It is only when such contest is instituted upon probable cause by one having an honest belief in his cause that it is thought, in the group of decisions last cited, that a public policy springs up to create an exception in order to prevent the forfeiture. Manifestly such an exception violates the deliberately expressed purpose of the testator. Such a clause can in no event become effective until the will has been duly approved and allowed. To establish such an exception would also deprive the donee of the gift over in

case of contest by the first named beneficiary. Thus in a double aspect it would accomplish a result contrary to the matured desire of the testator. Such a clause does not prevent a contest by the beneficiary under the will. It did not in the case at bar. Victor A. Searles opposed the probate of the will with great pecuniary profit to himself. The beneficiary has the option, either to receive the gift under the will, or undertake a contest of the will. He can exercise his election. The moral effect of such a clause would be manifest only in instances where the gift of a substantial part of the estate is made dependent on such a condition of which the beneficiary might be deprived by making an unsuccessful contest over the allowance of the will. Such a clause can be operative only in comparatively few cases. If the contest is successful, that clause falls with the rest of the will. Public and private benefits may flow from the operation of such a clause. Contests over the allowance of wills frequently, if not invariably, result in minute examination into the habits, manners, beliefs, conduct, idiosyncrasies, and all the essentially private and personal affairs of the testator, when he is not alive and cannot explain what may without explanation be given a sinister appearance. To most persons such exposure to publicity of their own personality is distasteful, if not abhorrent. The ease with which plausible contentions as to mental unsoundness may be supported by some evidence is also a factor which well may be in the mind of a testator in determining to insert such a clause in his will. Nothing in the law or in public policy, as we understand it, requires the denial of solace of that nature to one making a will. A will contest not infrequently engenders animosities and arouses hostilities among the kinsfolk of the testator, which may never be put to rest and which contribute to general unhappiness. Moreover, suspicions or beliefs in personal insanity, mental weakness, eccentricities, pernicious habits, or other odd characteristics centering in or radiating from the testator, may bring his family into evil repute and adversely affect the standing in the community of its members. Thus a will contest may bring sorrow and suffering to many concerned. A clause

of this nature may contribute to the fair reputation of the dead and to the peace and harmony of the living. Giving due weight to all these considerations, we are unable to bring our minds to the conviction that public policy requires that a testamentary clause such as here is involved be stamped as unlawful, even if the contestant had good grounds for opposing the allowance of the will. It seems to us that, both on principle and by the weight of authority, this is the right result.

This conclusion renders it unnecessary to discuss the correctness of the finding of the Probate Court, to the effect that the opposition of Victor A. Searles was without probable cause, and the other questions argued.

*Decree affirmed.*