Gerald G. GUNTER and Beryl L. Gunter, Appellants,

v.

Jo Ann POGUE, et al., Appellees.

No. 13–83–060–CV.

Court of Appeals of Texas, Corpus Christi.

April 26, 1984.

Rehearing Denied May 24, 1984.

Charles C. Murray, Atlas & Hall, McAllen, for appellants.

Joseph R. Preston, Mission, for appellees.

Before NYE, C.J., and YOUNG and UTTER, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment of the trial court ordering Gerald and Beryl Gunter, Independent Executors and appellants herein, to distribute certain property described in the will of Eldon Johnson, deceased, to Jo Ann Pogue, William Otten and Beryl Katchmazenski, appellees.

Eldon Johnson, the decedent, died testate in November 1979. His spouse had predeceased him, and he had no children of his own. He had eleven stepchildren by his marriage. The appellants and the appellees in this case were some of his stepchildren. The testator suffered from emphysema, which became very severe near the end of his life. During the later years of his life, he lived with and was cared for by his stepdaughter, appellant Beryl Gunter and her husband, Gerald Gunter.

During the preceding three years before his death, the testator executed four wills. The wills were executed on the following dates: Will One on January 14, 1977; Will Two on July 8, 1977; Will Three on March 2, 1978; and Will Four on November 9, 1978. The appellants offered Will Number Four for probate on November 28, 1979. The appellees filed a will contest and offered Will Number One for probate. In their contest, appellees claim that, at the time the testator executed Will Four, he did not have sufficient mental capacity and was unduly influenced by the Gunters. Appellants opposed the probate of Will Number One and offered, alternatively, Wills Number Three and Two. The bequests differed in each of these four wills. In each will, for instance, certain of the stepchildren were the primary beneficiaries. However, the bequests made in each of these wills differed with regard to the percent of testator's property that the various step-children would receive. His later wills completely deleted certain of the stepchildren and left certain amounts to various charities. However, one or both of the appellants were named as executors in all four wills. Wills Number Two, Three and Four contained forfeiture clauses.

All of the four wills were introduced into evidence, and special issues were submitted to the jury on each of the wills. In answer to the special issues submitted to the jury, they found that, at the time the testator, Eldon Johnson, executed Will Four, he did not have testamentary capacity and was unduly influenced. The jury found that Will Number Three was improperly witnessed and signed. The jury further found that the testator, Eldon Johnson, had signed Will Number Two and that it had *not* been executed as a result of any undue influence or mental incapacity. As a result, Will Two (the July 1977 will) was admitted to probate as the Last Will and Testament of Eldon Johnson. The Gunters filed a judgment N.O.V. and a Motion for New Trial. However, neither party appealed that judgment.

Appellants were appointed co-independent executors. On June 11, 1982, in obedience to the terms of the testator's will, they mailed letters to appellees and other stepchildren who had contested the will, informing them that, under the "no contest" or forfeiture clause that was in the will, they were to receive only $10.00 because they had contested the will. The forfeiture clause in the will read as follows:

> "Any person who shall contest this my Last Will and Testament for any reason either directly or indirectly, overtly or covertly, shall receive, instead of the portion or property given to him or her by this will, the sum of TEN AND 00/100 DOLLARS, each."

The appellees filed a motion in the probate court to remove the Gunters as Executors and, alternatively, a motion to compel the Gunters to distribute the assets of the estate to the beneficiaries of the estate, disregarding the forfeiture provision in the will.[1] The trial court ordered the Gunters to distribute the property and assets of the estate to the beneficiaries of the will, including the appellees, disregarding the forfeiture clause. The Gunters appeal the trial court's order.

Appellants contend that the trial court erred in ordering them to distribute the bequests to the contestants because Eldon Johnson's will could be no more specific. It provided for forfeiture of bequests to anyone contesting his will. They claim that the forfeiture clause should be given effect regardless of whether the contest was brought in good faith and upon probable cause because no exception for good faith and probable cause exists in Texas; and, in any event, the appellees had no finding that their contest was brought in good faith and with probable cause. We must agree.

■ Within certain bounds and some well known exceptions, the law confers on a testator the power to freely make any disposition he desires to make of his own property. *Perry v. Rogers*, 114 S.W. 897 (Tex.Civ.App.—1908, no writ). Every citizen of this state has the right to dispose of his property by will as he sees fit, regardless of how the property is distributed in the will. *Dominguez v. Duran*, 540 S.W.2d 567 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).

■ As a general rule, forfeiture provisions, or *in terrorem* clauses, in a will are to be construed strictly, and a breach of such clause should be declared only when the acts of the parties come within the express terms of the clause. *Sheffield v. Scott*, 662 S.W.2d 674 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

There are public policy considerations both favoring and disfavoring enforcement of no-contest clauses in wills. The view favoring enforcement of these clauses is

---

**1.** Appellees, the Pogues, William Otten and Beryl Katchmazenski, would each be beneficiaries of a ⅕th of ⁸⁄₁₀ portion of a trust under the Will Number Two. Appellants, Gerald and Beryl Gunter, were the beneficiaries of the testator's personal property. They were also to be the beneficiaries of all real property, mineral interests or royalties to hold as trustees for the beneficiaries. Under the trust, they would receive a ¹⁄₁₀th portion for Church work and a ⅕ of ⁸⁄₁₀ portion of the trust which is the same percent that the appellees were to receive. John Otten, a contestant in the case below, but not on appeal, would receive only $10.00 under Will Two.

that they allow the intent of the testator to be given full effect and avoid vexatious litigation, often among members of the same family. Such contests often result in considerable waste of the estates and hard feelings that can never be repaired. On the other hand, those who are attempting, in good faith, to determine the true intent of the testator should not be punished upon a showing that they brought a contest in good faith and had probable cause for bringing such contest. It may be said that enforcement of *in terrorem* clauses under certain circumstances may be tantamount to a denial of access to the courts. Some jurisdictions allow the good faith and probable cause exception to defeat a forfeiture clause in a will. E.g. *South Norwalk Trust Co. v. St. John*, 92 Conn. 168, 101 A. 961 (1917); *In re Cocklin's Estate*, 236 Iowa 98, 17 N.W.2d 129 (1945); *Haynes v. First National State Bank of New Jersey*, 87 N.J. 163, 432 A.2d 890 (1981); *In re Friend's Estate*, 209 Pa. 442, 58 A. 853 (1904). However, there are other jurisdictions declining to follow such rule. E.g. *In Re Hite's Estate*, 155 Cal. 436, 101 P. 443 (1909); *Rudd v. Searles*, 262 Mass. 490, 160 N.E. 882 (1928); *Commerce Trust Co. v. Weed*, 318 S.W.2d 289 (Mo.Sup.Ct.1958); *Elder v. Elder*, 84 R.I. 13, 120 A.2d 815 (1956).

Texas courts have, in two instances, upheld the validity of forfeiture clauses. *Massie v. Massie*, 118 S.W. 219 (Tex.Civ. App.—1909, no writ); *Perry v. Rogers*, 114 S.W. 897 (Tex.Civ.App.—1908, no writ). Both of these cases held that the forfeiture clauses were valid. They did not refer to any exception for good faith and probable cause. No Texas case has ruled directly on the issue of whether the "good faith and probable cause" exception to a forfeiture clause will be applied in Texas. Several Texas cases have acknowledged the existence of this exception. In *Calvery v. Calvery*, 122 Tex. 204, 55 S.W.2d 527, 530 (1932, opinion adopted), the Court said:

"The great weight of authority sustains the rule that forfeiture of rights under the terms of a will will not be enforced where the contest of the will was made in good faith and upon probable cause."

In *Calvery*, however, the court determined that the action taken was not a will contest, and thus did not pass upon the validity of this exception in Texas. In *First Methodist Episcopal Church South v. Anderson*, 110 S.W.2d 1177 (Tex.Civ.App.—Dallas 1937, writ dism'd), the Court said that, in view of the rule against declaring forfeitures, they did not think that a suit brought in good faith and upon probable cause to ascertain the intent of the testator should be considered an effort to vary the intent of the will. In the final analysis, however, they held that the plaintiff's suit was brought for the purpose of interpreting the testator's will, rather than to thwart the will of the testator. In *Hodge v. Ellis*, 268 S.W.2d 275 (Tex.Civ.App.— Fort Worth), rev'd on other grounds, 154 Tex. 341, 277 S.W.2d 900 (1954), the court there held that a suit brought in good faith and upon probable cause would not constitute ground for forfeiture of any delivery made to plaintiff in the will.[2]

Again, in *Sheffield v. Scott*, 662 S.W.2d at 676, the court noted that issues on good faith and probable cause for appellant to bring a will contest were submitted to the jury in a declaratory judgment action to enforce an *in terrorem* clause in a will. There was no discussion in the opinion regarding the propriety of this submission. The case at bar was unquestionably a will contest and could not be interpreted as a suit to construe a will or a suit to interpret a will.

The Texas courts which have touched peripherally on the good faith and probable cause exception indicate to us that, given the proper circumstances, Texas would and probably should adopt the good faith and probable cause exception. However, we can and do dispose of this appeal without

**2.** The suit brought in this case was not a will contest but a trespass to try title suit brought to

determine interest in property.

having to make such a determination in this case.

In appellants' first point of error, they claim that, even if an exception for good faith and probable cause exists, appellees failed to obtain such a finding. They claim the burden was clearly on the appellees to secure a finding on good faith and probable cause. Appellees, on the other hand, contend that the trial court indirectly made a finding of good faith and probable cause by the trial court's specific fact finding that the will admitted to probate reflected the true desires of the testator and that said will would not have been admitted had contestants not filed their original opposition to Will Number Four. Appellees further contend that the burden was upon appellants to obtain a finding that appellees had brought the suit in bad faith, citing the case of *Hodge v. Ellis*, supra, as authority for their proposition. This case was actually a Trespass to Try Title suit and a suit to construe a will, rather than a will contest. Even if the good faith and probable cause exception was the law in Texas, we disagree with appellees as to the burden of proof in such cases.

■■■ If the appellees sought to defeat the no-contest provision, they had the burden to show that their will contest was brought in good faith and upon probable cause. It was the duty of the appellants as executors, once Will Number Two was admitted to probate, to carry out the express terms of the testator's will, i.e., to pay "to him or her by this will, the sum of ten and no/100 dollars each" because appellees contested Eldon Johnson's last will and testament. If appellees had sought to defeat the forfeiture clause, they had the burden to come forward with proof that their original actions of contest were based in good faith and with probable cause. This they did not do.

While there was some evidence that the contest of Will Number Four might have been brought in good faith and upon probable cause, given the testator's physical condition at that time, there is no evidence indicating that the contest of Will Number Two was brought in good faith and upon probable cause. In fact, the evidence in the record is to the contrary.

After general findings of fact and conclusions of law were filed by the trial court, appellants specifically requested the court to make a finding on good faith and upon probable cause. The trial court refused to make any finding on the good faith and probable cause issue. In its conclusion of law, the trial judge decided not to uphold the forfeiture clause of the will. He did not, however, make a fact finding dealing with good faith and probable cause either way.

■■■ A trial judge is required to file findings which were made by him in support of his judgment. *Wagner v. Riske*, 142 Tex. 337, 178 S.W.2d 117 (Tex.1944); *Hazelwood v. Jinkins*, 580 S.W.2d 33 (Tex. Civ.App.—Houston [1st Dist.] 1979, no writ). After a judge has filed findings of fact and conclusions of law, a party may request additional findings, and the judge shall prepare and furnish amended findings and conclusions as may be proper. TEX.R. CIV.P., 298. Here, a request was made to make a finding on a controlling issue necessary to uphold the trial court's judgment. We cannot presume that the trial court found facts constituting the ultimate fact that the contest was brought in good faith and upon probable cause, because the trial court here was specifically requested to make a finding on the omitted issue of good faith and probable cause and refused to do so. Rule 299, TEX.R.CIV.P., which allows presumed findings on unrequested and omitted issues, does not permit a finding to be presumed when such finding was requested and refused by the trial judge. *Stretcher v. Gregg*, 542 S.W.2d 954 (Tex. Civ.App.—Texarkana 1976, no writ).

■■■ In appellants' second point of error, they claim the trial court erred in ordering them to distribute the bequest to contestants because there was no evidence or insufficient evidence that the will contest was brought in good faith and upon probable cause. We assume that the trial court

relied on evidence adduced at the contest of Will Number Four to reach his decision to order the appellants to distribute the bequests. No evidence on good faith and probable cause was introduced at the subsequent proceeding, nor was there any evidence to support a finding that the contest of Will Number Two was brought in good faith and upon probable cause.

John Rowin, the attorney who had prepared the last three wills, testified that he believed Mr. Johnson's medical condition was good. Beryl Gunter testified that there was nothing wrong with the testator's mind in July 1977 at the time he executed Will Number Two. Dr. Victor Bradley testified by deposition that Mr. Johnson was a "very sharp person." He indicated that he had examined the testator on June 22, 1977 and July 22, 1977 and believed that he was competent. The bequests made in Will Number Two were similar to the will of January 1977 (Will Number One), with a few exceptions.[3] Appellees claimed at oral argument that they did not file for a continuance or withdraw the contest of Will Number Two because the alternate application to admit the earlier wills was filed so late. They claimed that the discovery period had run and indicated that they had asked for continuances in the past and felt that the trial judge would be reluctant to grant another continuance. Appellees could have withdrawn their contest of this will at any time in an attempt to avoid the effect of the forfeiture clause.

If the appellees intended to utilize the good faith and probable cause exception to defeat the forfeiture clause, it was incumbent upon them to secure a finding on good faith and probable cause from the judge or jury on the will that was finally admitted to probate. Appellants' first and second points of error are sustained.

The judgment of the trial court is reversed, and judgment is rendered that appellees take $10.00 each as provided by Will Number Two, which was admitted to probate. Costs are adjudged against appellees.

REVERSED and RENDERED.

---

3. John Otten received only $10.00 under the July 1977 will, while in the January 1977 will, he would have received the same percent share as the other stepchildren). The Pogues, the Wil- liam Ottens and Beryl Katchmazenski received a bequest basically equal to the other stepchildren under the July 1977 will.