APPEALS COURT 
 
 IN THE MATTER OF THE ESTATE OF WILLIAM F. McLOUGHLIN.[1]

 
 Docket:
 23-P-770
 
 
 Dates:
 March 11, 2024 – September 30, 2024
 
 
 Present:
 Green, C.J., Henry, & Ditkoff, JJ.[2]
 
 
 County:
 Worcester
 

 
 Keywords:
 Will, Construction, Testamentary capacity, Validity. Probate Court, Affidavit. Words, "Contest."
 
 

  
 
      Complaint for instructions filed in the Worcester Division of the Probate and Family Court Department on August 19, 2022. 
      The case was heard by Kathryn M. Bailey, J., on motions for summary judgment.
      Barry A. Bachrach for Sean McLoughlin.
      Maureen E. Curran (Cara J. Daniels also present) for Margaret McLoughlin & others.
      HENRY, J.  As a fact witness, Sean McLoughlin provided an affidavit to his brother, William McLoughlin, Jr. (William Jr.), who was attempting to challenge their father's will.[3]  The question is whether Sean's actions triggered the "No Contest Provision" or in terrorem clause in the will, causing Sean to forfeit his inheritance.[4]  The personal representative of the estate of William F. McLoughlin, Sr. commenced an action in the Probate and Family Court seeking instructions in these circumstances.  We conclude that under the language of the specific in terrorem clause at issue, construed narrowly, Sean did not trigger the clause when he provided an affidavit in a matter brought by another person contesting or hoping to contest the will.  Accordingly, we reverse the entry of summary judgment against Sean and remand this matter to the Probate and Family Court for entry of summary judgment in favor of Sean.
      Background.  The facts are undisputed.  
      1.  The will.  William F. McLoughlin, Sr. (decedent) died on October 30, 2020.  He did not have a surviving spouse.  He was survived by his six children:  William Jr., Thomas, Sean, Margaret, Erin, and Susan.  The decedent left a last will and testament dated September 25, 2020 (will), thirty-five days before his death, that devised assets to all of his children except William Jr.  
      Section 3.2 of the will left a piece of real property to Sean.  Section 3.1 of the will left two pieces of real property to Thomas.  Pursuant to Section 5 of the will, the residue of the estate was to be split equally among all of the children except William Jr.
      The will also contains a no contest clause, set forth in detail infra, which functions to disinherit a beneficiary who contests the will.  Pursuant to this clause, the judge declared that benefits provided for Sean in the will are revoked.  Because the will excluded William Jr. entirely, the in terrorem clause could cause William Jr. no fear because he risked nothing in contesting the will.[5]
      On a petition filed by Thomas, a judge of the Probate and Family Court admitted the will to probate and appointed Thomas personal representative of the estate on April 9, 2021.  Sean did not file an appearance or an objection to the will.
      2.  William Jr.'s motion to allow late objection.  William Jr. filed a motion to allow him to file an objection to the will late -- on July 21, 2021 -- asserting that he was unaware of the "new" 2020 will, he did not understand that it was the 2020 will that had been admitted to probate, and the 2020 will was invalid based on the decedent's mental state at the time of its writing.[6]  Sean was not a party to this motion.
      In response to William Jr.'s motion, Thomas submitted his own affidavit affirming that William Jr. had been made aware of the existence of the 2020 will and changes to the distributions to be made under it prior to the probate action.  Thomas's affidavit recounted discussions after their father's death about the will with William Jr. at which Sean was present.    
      William Jr.'s attorney, Morgan Doiron, interviewed Sean about Thomas's affidavit and Sean "strongly disagreed with [Thomas's] statements" about conversations with William Jr.  Sean expressed concern that if he signed a statement to correct Thomas's misstatements, he did not want it to "bite [him] in the . . . ," and the attorney assured him it would be fine.  William Jr.'s attorney prepared an affidavit that Sean reviewed for its truth and executed it.  
      Sean's affidavit stated it was "in support of" William Jr.'s motion to allow late filing of objection to the will "and in rebuttal to" Thomas's affidavit.  Sean corroborated allegations made by William Jr. and contradicted some of Thomas's affidavit.  Specifically, Sean disputed Thomas's account, calling certain statements "untrue and frankly absurd," and stating that conversations with William Jr. about the 2020 will had never occurred.  Sean also stated that the decedent suffered from Alzheimer's and dementia, beginning in 2007, and that by 2020, the decedent's mental state had significantly deteriorated.  Sean alleged that Margaret, Susan, and Thomas kept the decedent isolated and "controlled," and ultimately "manipulated [the decedent] into executing the 2020 will to alter his original wishes" that "the boys . . . get equal shares of [the decedent's] real estate and the rest of his estate . . . be divided as" provided in the will executed in 2004.  
      William Jr.'s attorney filed Sean's affidavit with the court and served it on the personal representative.  After a hearing, a judge of the Probate Court denied William Jr.'s motion for late filing.  
      3.  Complaint for instructions.  On August 19, 2022, Thomas filed a complaint for instructions (complaint) to resolve the question whether Sean's affidavit triggered the in terrorem clause of the will, thereby forfeiting his inheritance.  Sean filed a notice of appearance and objection to the complaint for instructions.  He then filed a motion for summary judgment arguing that the in terrorem clause did not apply because he did not contest the will and did not institute or join in (except as a party defendant) any proceeding to contest the validity of the will.  As respondents to the complaint, Erin, Margaret, and Susan (collectively, sisters) filed a cross motion for summary judgment requesting that the judge declare that "by filing an Affidavit supporting his brother's attempt to challenge [the will] and stating that his father was incompetent and unduly influenced by his siblings, [Sean] forfeited his rights to an inheritance based on the in terrorem clause."  A judge of the Probate and Family Court denied Sean's motion, allowed the sisters' motion, and "declar[ed] that benefits provided for Sean in the [w]ill are revoked, and such revoked benefits shall pass to the residuary beneficiaries of the [w]ill (other than Sean)."  Sean now appeals.[7] 
      Discussion.  Given the undisputed facts, the question whether Sean's affidavit triggered the will's in terrorem clause "is a legal conclusion that we review de novo."  Ritter v. Massachusetts Cas. Ins. Co., 439 Mass. 214, 215 (2003).  
      Massachusetts has long recognized in terrorem clauses as valid and enforceable.  See Old Colony Trust Co. v. Wolfman, 311 Mass. 614, 616 (1942); Rudd v. Searles, 262 Mass. 490, 499 (1928).[8]  The enforceability of such clauses was codified in G. L. c. 190B, § 2-517, which became effective July 1, 2011, and provides:  "A provision in a will purporting to penalize an interested person for contesting the will or instituting other proceedings relating to the estate is enforceable."  However, "because equity does not favor forfeitures, [in terrorem] clauses have been construed narrowly."  Savage v. Oliszczak, 77 Mass. App. Ct. 145, 149 (2010), quoting Bogert, Trusts and Trustees § 181 (rev. 2d ed. 2007).  Accord Lobb v. Brown, 208 Cal. 476, 484 (1929); Saier v. Saier, 366 Mich. 515, 520 (1962); Haley v. Pickelsimer, 261 N.C. 293, 299 (1964); Elder v. Elder, 84 R.I. 13, 24 (1956).
      The clause at issue here was entitled "No Contest Provision" and provided as follows:
"If any beneficiary hereunder shall contest the probate or validity of this will or of any of the beneficiary designations in place in connection with any of my qualified plans, IRAs, life insurance policies or any other asset of mine passing outside of this, my last will, or any provisions thereof, or shall institute or join in (except as a party defendant) any proceeding to contest the validity of this will or any provisions I have made during my lifetime for the distribution of my assets, whether probate or non-probate in nature, or to prevent any provision thereof from being carried out in accordance with its terms, then all benefits provided for such beneficiary are revoked, and such revoked benefits shall pass to the residuary beneficiaries of this will (other than such beneficiary)" (emphasis added).  
      Sean, the sisters, and the judge all agreed that the in terrorem clause of the will has two triggers as separated by the emphasized "or."  First, the clause can be triggered if a beneficiary "shall contest the probate or validity of [the] will."  Second, the clause can be triggered if a beneficiary "shall institute or join in . . . any proceeding to contest the validity of [the] will."  The sisters argue and the judge found that Sean violated both provisions.  Because an in terrorem clause must be interpreted narrowly, see Savage, 77 Mass. App. Ct. at 149, we disagree.
      As to the first trigger, the sisters assert, and the judge agreed, that the phrase "contest the probate or validity of [the] will" could be through litigation or through conduct unrelated to litigation.  The judge reasoned that "[t]he use of the word 'contest' as opposed to [the word] 'objection' in the No Contest Provision is designed to be read so as not [to limit] actions which trigger the first clause of the No Contest Provision to litigation."  This is not a narrow reading of the clause.  As the Supreme Judicial Court explained in O'Rourke v. Hunter, 446 Mass. 814, 816 (2006), "[a] person contesting the probate of a will must file an appearance" and an "affidavit of objections."  The two terms, "contest" and "object," are used for the same purpose:  to challenge the validity of a will after it has been submitted for court approval.  The Supreme Judicial Court further elaborated in Sacks v. Dissinger, 488 Mass. 780, 784 (2021), that "[i]n the context of wills, [the court has] recognized the distinction between contests, which seek to determine the validity of a legal instrument, and other causes of action, which do not."  The court applied that same rule to trusts.  Id. at 785.[9]  Construing the term "contest" narrowly and applying traditional rules of interpretation, see Gustafson v. Svenson, 373 Mass. 273, 275 (1977) (where will unambiguous, language interpreted according to legal meaning, even where testator not likely to have understood legal meaning); Watson v. Goldthwaite, 345 Mass. 29, 33-34 (1962) (construing word "issue" according to its technical legal meaning where no evidence of testatrix's intentions to contrary), "contest" is a judicial proceeding to determine the validity of a will.  Accordingly, Sean did not "contest the probate or validity of" his father's will.  
      As to the second trigger, Sean also did not "institute or join in (except as a party defendant) any proceeding to contest the validity of [the] will."  Here, assuming William Jr.'s motion to allow late filing of objection to the will was a proceeding within the meaning of the in terrorem clause, Sean did not institute the motion or proceeding.  Similarly, he did not join it.  See Mass. R. Civ. P. 19, 365 Mass. 765 (1974) (person is understood to have "joined" action when appearing as party in that action).
      Sean's involvement was that of a witness.  Construing this in terrorem clause narrowly, Sean's act of providing an affidavit that Attorney Doiron submitted in support of William Jr.'s motion did not amount to contesting or to instituting or joining in a proceeding to contest the validity of the will sufficient to trigger the clause.  The sisters have cited no case to the contrary in similar circumstances and we have found none.  Indeed, the only Massachusetts cases where we have concluded that there was a violation of a no contest clause are ones in which the individual was a party to the action challenging the will or trust.  See Rudd, 262 Mass. at 491; Matter of the Estate of Urban, 102 Mass. App. Ct. 284, 289 & n.8 (2023); Caputo v. Moulton, 102 Mass. App. Ct. 251, 260-261 (2023) (beneficiaries' action to remove trustees could potentially trigger no contest clause of trust).
      It is true that Sean voluntarily submitted the affidavit rather than insisting that he be subpoenaed.  It also is true that his affidavit (making statements about the decedent's competency), went farther than it needed to go to respond to Thomas's statements about the siblings' conversations about the will after their father's death.  Neither fact affects our analysis because we construe in terrorem clauses narrowly and the affidavit did not trigger this clause.  As Sean argues, had the judge decided to hold an evidentiary hearing and had Sean been subpoenaed to testify, he likely would not have been found in violation of the clause.  We do not think the outcome should depend on whether a witness is sophisticated enough to insist on a subpoena.
      Moreover, while in terrorem clauses are permissible, public policy also "demands that full and complete opportunity should be given to all interested parties to test the validity of . . . a testamentary document, not only to protect that which may be rightfully and legally theirs, but also to preserve the wishes and desires of the [testator] against designing persons seeking to take advantage of [the testator's] age and infirmities which are the usual result of advanced years."  Lobb, 208 Cal. at 491-492.  Once a legal process is initiated, as it was here by William Jr.'s motion, prospective witnesses should be permitted to testify and provide documents.
      Our conclusion is in accord with decisions from other jurisdictions that have considered similar factual circumstances over the last century.  While the clauses have varied in their language and some clauses prohibited direct or indirect efforts to contest a will, the clauses are construed narrowly and testifying as a witness in a contest brought by another person has not been deemed sufficient to trigger the in terrorem clause.  For example, in Haradon v. Clark, 190 Iowa 798, 799 (1921), the Supreme Court of Iowa held that a beneficiary who did not "join in the objections filed to the admission of the will to probate, did not employ counsel or contribute to the expense of the contest, but appeared as a witness without subpoena at the request of contestants and testified in their behalf" was not a contestant even though he admitted he was sympathetic to the challenge.  Similarly, in Richards v. Piefer, 229 Mich. 609, 610 (1925), the Michigan Supreme Court held that a beneficiary who testified without being formally subpoenaed and who admitted in her testimony that her sympathies were with the contestant rather than a different beneficiary, did not trigger a no contest clause that covered a contest or an "attempt to set aside th[e] will."  In Lobb, 208 Cal. at 483-491, the California Supreme Court held that two brothers did not trigger a no contest clause that prohibited "institut[ing]" proceedings contesting the will even though one brother testified and identified another witness, and the other brother paid the contestants' attorney some money.  See Saier, 366 Mich. at 517, 525 (legatee who contacted witnesses for his brother's contest and who vociferously sympathized with his brother but did not file contest did not "contest or attempt to contest" admission of will to probate); Haley, 261 N.C. at 295-296, 301 (legatee who assisted her minor daughter in bringing breach of contract action and gave evidence to establish that testator had promised to leave one-fifth of estate to legatee's daughter did not "object[] or dissent[] to" terms of will); Elder, 84 R.I. at 18, 25 (in terrorem clause triggered if legatee "should institute, conduct or share in any proceedings to oppose" will not triggered by legatee who was called as witness).  
      Nothing here indicates that Sean engaged in conduct beyond appearing as a witness; typically, more active participation in the contest is required to trigger an in terrorem clause.  See Donegan v. Wade, 70 Ala. 501, 505-506 (1881) (where brother did not appear as named party, but funded and advised in sister's will contest, brother violated in terrorem clause); In re Estate of Barger, 303 Neb. 817, 833 (2019) (beneficiaries "supported" contest where they "aided and participated in the initiation and litigation of the will contest" brought by another prior to its filing, testified in opposition to will, and paid contesting party to bring action);[10] Kayhart v. Whitehead, 77 N.J. Eq. 12, 15-16 (Ch. 1910), aff'd 78 N.J. Eq. 580 (E. & A. 1911) (violation of in terrorem clause where beneficiary testified in will contest, aided [contestant] in securing witnesses, entered into written agreement with caveator, and filed appearance, becoming party).
      Conclusion.  The judgment is reversed and the case is remanded for entry of a new judgment in favor of Sean.
 
So ordered.
footnotes

          [1] The decedent was also known as William F. McLoughlin, Sr.
      
          [2] Chief Justice Green participated in the deliberation on this case prior to his retirement.
          [3] Because five of the decedent's children share a surname, we refer to the children by their first names to avoid confusion.
      
          [4] "In terrorem" is Latin for "in fear."  These clauses may be referred to as no contest clauses, in terrorem clauses, or forfeiture clauses.  We use them interchangeably.
                    [5] For an in terrorem provision to have power, the will must leave a beneficiary a sufficient inheritance such that the risk of forfeiture of that inheritance is a real disincentive for the beneficiary to challenge the will.  See Rudd v. Searles, 262 Mass. 490, 500 (1928) (outlining privacy concerns, among others, that might motivate insertion of in terrorem provision). 
               [6] Both William Jr. and Sean aver that the decedent executed a prior will in 2004.  As part of his motion to allow late filing of his objection, William Jr. alleged that he was unaware of the 2020 will until June of 2021, months after Thomas filed a petition to probate the will.
               [7] The estate, through the personal representative, Thomas, filed a notice that he would not be filing a brief in connection with this appeal.
               [8] The Supreme Judicial Court summarized succinctly in Rudd why a testator should be empowered to include an in terrorem clause: 
     "A will contest not infrequently engenders animosities and arouses hostilities among the kinsfolk of the testator, which may never be put to rest and which contribute to general unhappiness.  Moreover, suspicions or beliefs in personal insanity, mental weakness, eccentricities, pernicious habits, or other odd characteristics centering in or radiating from the testator, may bring his family into evil repute and adversely affect the standing in the community of its members.  Thus a will contest may bring sorrow and suffering to many concerned.  A clause of this nature may contribute to the fair reputation of the dead and to the peace and harmony of the living." 
Rudd, 262 Mass. at 500-501.
       It may be optimistic to believe such clauses will bring peace and harmony between unequal beneficiaries or those who have been excluded, but such clauses may reduce litigation.
          [9] The Massachusetts Uniform Probate Code does not define "contest."  "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose . . . .  We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  Williams v. Board of Appeals of Norwell, 490 Mass. 684, 693-694 (2022), quoting Commonwealth v. Morasse, 446 Mass. 113, 116 (2006).
          [10] We note that the Nebraska Supreme Court interpreted the in terrorem clause broadly, its conclusion on this issue was dicta, Nebraska law differs in that in terrorem clauses are enforceable only if the contest is brought without probable cause, and the court ultimately concluded there was probable cause of undue influence.  See In re Estate of Barger, 303 Neb. at 833-835, 837.