SUZANNE SAVAGE & another,[1] trustees,[2] *vs.* CHERYL
OLISZCZAK & others.[3]

No. 09-P-513.

Norfolk. February 8, 2010. - June 29, 2010.

Present: KANTROWITZ, GREEN, & MEADE, JJ.

*Will,* Construction. *Devise and Legacy,* "Pour-over." *Trust,* Beneficiary.

In a proceeding to probate a will, a Probate and Family Court judge properly
entered summary judgment that the filing of a challenge to the will did not
trigger an in terrorem clause (clause) contained in a pour-over trust
designated as the sole beneficiary under the will, where the trust was a
separate instrument from the will, with independent legal significance;
where the trust was not a testamentary trust created by the will and the
will did not incorporate the terms of the trust by reference; and where the
challenge was directed to the will, rather than the trust, and accordingly
did not implicate the clause by the terms of either the will or the clause
itself [147-148]; moreover, even reviewing the will and the trust together
as interrelated components of the testator's estate plan did not compel a
different result, as nothing in the terms of the will or the trust prevented
more significant funding of the trust during the testator's life such that it
could have been funded by any number of sources wholly independently
of the will [148-149].
In the circumstances of a proceeding to probate a will, procedural issues aris-
ing from the appointment by a Probate and Family Court judge of a special
master to provide guidance on the question of law raised by a motion for
summary judgment did not require this court to disturb the judgment. [150]

COMPLAINT in equity filed in the Norfolk Division of the Probate
and Family Court Department on February 6, 2008.

The case was heard by *Christina L. Harms,* J., on a motion
for summary judgment.

*Daniel R. Seigenberg* for the plaintiffs.

[1]David Hatch.

[2]Of the Georgenia M. Hatch Living Trust.

[3]Cathie A. DeRochers, James Morgan, Robert Morgan, Joanne D'Intinosanto,
and Stephen Hatch.

*Thomas J. Carey, Jr.* (*Dianne W. Hayes* with him) for the defendants.

GREEN, J. Does commencement of a will contest trigger an in terrorem clause contained in a pour-over trust designated as the sole beneficiary under the will? The plaintiffs commenced an action in the Probate and Family Court seeking an answer to that question, and now appeal from a decree answering the question in the negative. We affirm.

*Background.* The parties are the children of Georgenia M. Hatch, who died on March 14, 2006. Several years before her death, on January 29, 2002, Georgenia[4] executed various estate planning documents, including a last will and testament (will) and the Georgenia M. Hatch Living Trust (trust). The will designated the trust as the sole devisee of Georgenia's estate.[5] The trust contained a variety of provisions directing the distribution of assets transferred into it. The trust also contained (in Article Fifteen, section 5) the following provision, commonly known as an in terrorem clause:

> "If any person, including a beneficiary, other than me, shall in any manner, directly or indirectly, attempt to contest or oppose the validity of this agreement, including any amendments thereto, or commences or prosecutes any legal proceedings to set this agreement aside, then in such event such person shall forfeit his or her share, cease to have any right or interest in the trust property, and shall be deemed to have predeceased me."

The trust stated an initial funding of ten dollars, made concurrently with its execution. The trust was not otherwise funded during Georgenia's life.

On May 3, 2006, Suzanne Savage and David Hatch, the execu-

---

[4]We refer to the decedent and the parties by their first names where necessary to avoid confusion.

[5]Article Two of the will provides as follows:

"All of my property of whatever nature and kind, wherever situated, shall be distributed to [the trust]. . . . I specifically omit from this property any property in any trust settled by my late husband, Manuel Hatch. I also exempt from this property any property over which I may have a power of appointment under any trust or will made by my late husband, Manuel Hatch."

tors named in Georgenia's will, filed a petition to probate the will. On July 14, 2006, the defendants Cheryl Oliszczak, James Morgan, and Cathie A. DeRochers each filed an affidavit of objections to the allowance of the will, asserting that Georgenia lacked testamentary capacity to execute the will and that the will was the product of duress or undue influence. Eventually, on July 11, 2007, the defendants withdrew their challenge to the will.

In February, 2008, the plaintiffs brought the present action, seeking instruction on whether the challenge by Cheryl, James, and Cathie to the will triggered the in terrorem clause contained in the trust, resulting in a forfeiture by them of any interest they otherwise would hold under the trust. The defendants moved to dismiss the complaint, and the plaintiffs responded with a motion for summary judgment. When the parties appeared for argument on the summary judgment motion, the judge, sua sponte, entered an order appointing a special master to review the motion for summary judgment and to determine whether, in his judgment, Cheryl, James, and Cathie had forfeited their interests in the trust. The special master thereafter prepared and filed a draft report, expressing his conclusion that no forfeiture had occurred, and the judge entered an order on the plaintiffs' motion for summary judgment, adopting the master's conclusions. This appeal followed.[6]

*Discussion.* The determination that the defendants' challenge to the will did not trigger the trust's in terrorem clause "is a legal conclusion that we review de novo." *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003).

"A provision forfeiting the interest of a beneficiary who contests a will is valid." *Old Colony Trust Co.* v. *Wolfman*, 311 Mass. 614, 616 (1942). See *Rudd* v. *Searles*, 262 Mass. 490, 499 (1928). However, the will in the present case contains no such provision. The trust is a separate instrument from the will, with independent legal significance. See *Second Bank-State St.*

---

[6]The defendants also filed a notice of appeal, based on their counterclaim asserting that the plaintiffs' commencement of this action likewise constituted a violation of the in terrorem clause under the trust, to the end that the plaintiffs had also forfeited their respective interests under the trust. However, the defendants have abandoned their cross appeal.

*Trust Co.* v. *Pinion,* 341 Mass. 366, 369-370 (1960). See also G. L. c. 203, § 3B. The trust was not a testamentary trust created by the will, and the will did not incorporate the terms of the trust by reference. *Second Bank-State St. Trust Co.* v. *Pinion, supra* at 367. The defendants' challenge was directed to the will, rather than the trust, and accordingly did not implicate the in terrorem clause by the terms of either the will or the in terrorem clause itself.

The plaintiffs contend nonetheless that the will and trust should be read together as inextricably intertwined elements of Georgenia's estate plan, suggesting that, had the defendants' challenge to the will been successful, it would have defeated the trust as a practical matter, since the trust would have received no assets under the will. To be sure, we generally will review the separate components of a decedent's estate plan as parts of an interrelated whole. See *Clymer* v. *Mayo,* 393 Mass. 754, 766 (1985). However, we are not persuaded that reviewing the instruments together as interrelated components of Georgenia's estate plan supports a conclusion that a challenge to the will operates to trigger the in terrorem clause contained in the trust.[7]

As a threshold matter, the plaintiffs overstate the interrelationship between the will and the trust. Though it appears that the trust was in fact only nominally funded during Georgenia's life, there is nothing in the terms of either the will or the trust that prevented more significant funding during her life. The trust could have been funded by any number of sources wholly independently of the will. For example, the trust could have been designated as the beneficiary under a life insurance policy. Article Three of the trust explicitly expresses Georgenia's "intent that, from time to time and when necessary, specific items of property will be individually transferred and titled either directly

---

[7]The plaintiffs acknowledge that no Massachusetts case has adopted the position they advocate. The single case they submit in support of their position is *Matter of Ellis,* 252 A.D. 2d 118 (N.Y. App. Div. 1998), which we consider inapposite. In *Ellis,* the court treated the respondents' actions (which included objections filed against the will) as triggering an in terrorem clause contained in a will, even though the respondents eventually withdrew their objections. *Id.* at 125. The court accordingly weighed the scope and nature of litigation that it considered sufficient to trigger the in terrorem clause; it did not treat a challenge to one instrument as sufficient to trigger an in terrorem clause contained in a separate instrument. *Id.* at 125-126.

in the name of my trust or in a nominee for the benefit of my trust.'' Similarly, Article Five describes the trustees' duties regarding various types of property (in addition to insurance policies) that might be held by the trust during Georgenia's life, including retirement plans and annuity contracts.

We also note that the purpose of an in terrorem clause is to deter challenges to a will. See *Rudd* v. *Searles*, 262 Mass. at 500-501. See also Bogert, Trusts and Trustees § 181 (rev. 2d ed. 2007). In the present case, the defendants filed their challenge to the will in response to the filing of the will for probate; the trust was not required to be submitted with the will, and was in fact not so filed. As the defendants observe, there can be no deterrent value to a clause contained in an instrument that is not made public incident to the proceeding in which the challenge arises (and thus not thereby disclosed to all beneficiaries); indeed it would be draconian to invoke a forfeiture clause against beneficiaries who challenge a will that does not contain an in terrorem clause, based on the inclusion of such a provision in a separate but undisclosed instrument.[8] We likewise observe that, "because equity does not favor forfeitures, [in terrorem] clauses have been construed narrowly." Bogert, Trusts and Trustees, *supra.* Cf. *Trustees of Dartmouth College* v. *Quincy,* 357 Mass. 521, 531 (1970).

---

[8]The record does not indicate whether the defendants were in fact aware or unaware of the in terrorem clause contained in the trust in the present case. However, our conclusion does not rest on whether the parties to a particular action had knowledge in fact that a separate instrument contains such a provision. Instead, we note the difference between the public character of a will filed for probate and the nonpublic character of a related pour-over trust to illustrate their status as separate and independent instruments. We note as well that a testator who employs an in terrorem clause to deter a challenge to her will can rely on the fact that her will must be filed for probate before any contest might arise, but cannot know whether potential contestants will have knowledge of a putatively deterrent in terrorem provision contained in a separate nonpublic instrument. In any event, at least one case has declined to enforce a forfeiture clause in a will based on a challenge to a related trust, and we are aware of no case reaching a contrary conclusion. See *Meyer* v. *Meyer,* 162 Cal. App. 4th 983 (2008). Finally, we note that, even if the defendants had actual knowledge of the terms of the trust, including the in terrorem clause, they had no way of knowing whether Georgenia had funded the trust during her lifetime from sources other than the devise under her will; they accordingly could not know whether a challenge to the will would defeat the trust in practical (if not legal) effect.

The plaintiffs separately raise various procedural challenges to the judgment, based on their claim that the special master failed to follow the requirements of Mass.R.Civ.P. 53. In particular, the plaintiffs cite the master's failure to conduct a hearing, as contemplated by Mass.R.Civ.P. 53(f), and the motion judge's failure to entertain objections to the master's report, as contemplated by Mass.R.Civ.P. 53(h)(2). We discern no cause to disturb the judgment based on the cited irregularities, which all concern procedures regulating the activities of a special master in making findings of fact; in the present case the order of reference framed no questions of fact and instead requested guidance solely on a pure question of law framed in a motion for summary judgment.[9] Based on our de novo review of the undisputed facts, the summary judgment entered by the motion judge correctly resolved the legal question presented by this case.

*Judgment affirmed.*

---

[9]Though we discern no cause to disturb the judgment, we question the propriety of the judge's sua sponte appointment of a special master to review and express his judgment concerning the legal question presented by the case. A special master ordinarily may be appointed for the purpose of conducting hearings directed to findings of fact. See Mass.R.Civ.P. 53(a)(i), as amended, 386 Mass. 1237 (1982); Smith & Zobel, Rules Practice § 53.1 (2d ed. 2007). To that end, the master's report should address questions of fact, and should not express conclusions of law. *Id.* at § 53.8. " 'The main object of referring a suit to a master is to have the facts settled by him . . . .' The confirmation of a master's report simply establishes the facts in an action, and it remains for the trial judge to enter the proper judgment on the facts as found and on the law as applied thereto." *Hardiman* v. *Hardiman*, 11 Mass. App. Ct. 626, 628 (1981), quoting from *Peters* v. *Wallach*, 366 Mass. 622, 626 (1975). Though neither party objected to the order of reference, we do not endorse the judge's appointment of a master for the evaluation of a pure question of law. Moreover, even to the extent that the reference of a pure question of law to a master may be a permissible exercise of judicial discretion, "the corresponding responsibility and consequences of a reference are such that the discretion should be exercised most discriminately and reasonably sparingly." *O'Brien* v. *Dwight*, 363 Mass. 256, 280 (1973). Improper references "approach[] the abdication of judicial responsibility and the undermining of public confidence in the judiciary." *Ibid.* We note in particular that the judgment in the present case required the plaintiff trustees "to pay the fees of the special master 'off the top' from trust assets, before any distribution to beneficiaries is made from those assets." Compare *id.* at 280 n.10.