NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-380

DAVID J. WALTON

vs.

DEREK R. WALTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Derek Walton (Derek) appeals from a summary judgment and a decree in these consolidated matters by a judge of the Probate and Family Court in favor of his brother, David Walton (David), involving a dispute about property located at 21 Sunset Strip in Mashpee (the property). Derek claims that a genuine issue of material fact remains as to their mother's intent regarding the property and that the in terrorem clause contained in the will should not be enforced in response to his filing of an equity action. We agree with Derek and, accordingly, vacate both the summary judgment and decree and remand this matter to the Probate and Family Court for further proceedings consistent with this memorandum and order.

Background.  The facts are largely undisputed.  The parties are the children of Elizabeth Walton (decedent), who died October 29, 2017.  The decedent executed a last will and testament (the will) dated October 26, 2016, that contained a variety of provisions directing the distribution of her assets mostly to two of her sons, David and Derek.  The will named Derek and David as the personal representatives of the estate. The will granted David and Derek an interest in the  property, and bequeathed the remainder of her estate, consisting of real and personal property, in equal shares to them, per stirpes. The will also contains an in terrorem clause, which functions to disinherit a beneficiary who contests the validity of the decedent's will.

In May of 2018 David and Derek filed a petition to informally probate the decedent's will and requested that they both be appointed as personal representatives of the estate. Derek claims that it was then that he and David discussed the decedent's intentions regarding the property.  According to Derek, David assured him that he was aware of their mother's intentions and promised that he would not interfere with Derek's life estate in the property.  In June 2018, the petition for informal probate of the decedent's will and for David and Derek to act as personal representatives was allowed.

2

Shortly after the decedent's death, Derek moved into the property while David remained in Florida.  In 2022, David began requesting that Derek purchase his ownership rights of the property under the procedure provided for in the will.[1]  Ultimately, the brothers could not agree on a purchase price, as Derek wanted to purchase the property using a valuation from 2018, which was significantly lower than the projected market value in 2023.  In September 2023, after negotiations seemingly arrived at an impasse, David filed a petition to partition the property in the Probate and Family Court.  The petition requested that David and Derek be declared tenants in common, to have the property sold at full market value, and for the brothers to split the proceeds.  Derek filed a separate equity action claiming that David was estopped from seeking partition of the property because he promised that Derek could "reside, [and] maintain his life estate in the [property] without interference."  Derek also sought a declaratory judgment, asking

---

[1] The will provides the following procedure to sell the property:  "If either [Derek or David] decides to sell the property, then the other must be given the opportunity to purchase his brother's share in the home at either a mutually agreed upon price, or if a price cannot be agreed upon, then at fair market value as determined by a licensed, independent real estate appraiser.  If the other is unwilling or unable to purchase his brother's share, then the property shall be sold and the proceeds will be split equally between [David and Derek], per stirpes."

the court to determine that Derek was granted the right to remain on the property for life and that David's petition for partition be dismissed with prejudice. At no time did either party file an action seeking instruction on whether the decedent bequeathed a life estate, a tenancy in common, or some other lesser right in the property.

After the matters were consolidated, David moved for summary judgment on both the petition to partition and the equity action. He contended that Derek triggered the in terrorem provision of the decedent's will by filing the equity complaint and, as a result, Derek forfeited any ownership interest in the property. In the alternative, David claimed that he and Derek were granted a tenancy in common and that he is entitled to receive fifty percent of the fair market value, to be determined by the partition.

A judge of the Probate and Family Court determined that David and Derek were tenants in common, but also that Derek had triggered the in terrorem clause of the decedent's will by filing his equity complaint. As a result, the judge reasoned that Derek's interest in the property was extinguished, and David was therefore the sole owner of the property. The judge granted David's motion for summary judgment on the equity claims and, since she found that David was the sole owner of the property, dismissed the petition to partition. Derek filed a

4

motion for reconsideration, which was denied on the papers, and he now appeals.

Discussion. 1. In terrorem clause. We review de novo the determination that the defendant's challenge to the will triggered the will's in terrorem clause. See Savage v. Oliszczak, 77 Mass. App. Ct. 145, 147 (2010). An in terrorem clause, otherwise known as a "no contest" clause, serves a legitimate purpose -- to deter challenges to a will and unnecessary disruptions to probate proceedings. Id. at 149. While Massachusetts has recognized the validity and enforceability of in terrorem clauses, "because equity does not favor forfeitures, [in terrorem] clauses have been construed narrowly." Matter of the Estate of McLoughlin, 104 Mass. App. Ct. 752, 756 (2024), quoting Savage, supra at 149.

The clause at issue here states, in pertinent part, that if any beneficiary "in any manner, directly or indirectly, attempt[s] to contest or oppose the validity of my Last Will and Testament, or commences, continues, or prosecutes any legal proceedings to set this my Last Will and Testament aside," then "such person shall forfeit his or her share" and cease to have any interest in the estate. It further provides that if any person "[f]iles a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible)

5

of property already so characterized by a Document," then that person's rights or interests in the estate will be forfeited.[2] Therefore, as pertinent here, the in terrorem clause can be triggered in two ways:  (1) if a beneficiary contests the validity of the decedent's will; and (2) if a beneficiary attempts to change the character of the property.

In the present case, construing the in terrorem clause narrowly, as we must, we conclude that Derek's filing of the equity complaint did not trigger the no contest provision of the decedent's will.  As we have noted above, the purpose of the in terrorem clause is "to deter challenges to a will."  Savage, 77 Mass. App. Ct. at 149.  Derek did not contest the validity of the will by filing an objection.  Rather, in response to David's filing of a petition for partition of the property, Derek filed his claim in equity seeking a judicial determination that he and David each received a life estate in the decedent's property. David's filing of the petition to partition predated Derek's equity claim and characterized the brothers' interest in the property as a tenancy in common.  We fail to see how Derek's

---

[2] The will further provides that the terms "Document" or "Documents" under this section collectively refers to "any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension or profit sharing plan, or insurance policy signed by me, . . . or any amendments or codicils to any Document."

responsive claim that the brothers were beneficiaries of a life estate somehow triggered the in terrorem clause.  Moreover, Derek's equity claim did not challenge the validity of the will or attempt to change the character of the property.  Rather, it sought to determine whether the language of the will reflected the decedent's intent to grant David and Derek a life estate, a tenancy in common, or some other lesser right to use and occupy the property.  It also sought to hold David accountable for a promise he allegedly made to his brother, i.e., that he could live at the property for his life.  See Mazzola v. Myers, 363 Mass. 625, 639 (1973) ("in seeking an interpretation of the will, the plaintiff has not attacked or challenged the will or any part of it," so in terrorem clause did not apply).  The in terrorem clause was not triggered.

2.  The will.  Having concluded that the in terrorem clause was not triggered, we turn to the provision of the will regarding the property.  In allowing the motion for summary judgment, the judge found the terms of the decedent's will regarding the devise of the property to be unambiguous.  Specifically, the judge found that the third clause unambiguously vested the parties as tenants in common and therefore extrinsic evidence of the decedent's intent did not need to be considered.  We are not so convinced.

7

We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018).  "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue."  Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008).

"The fundamental rule for the construction of wills is to ascertain the intention of the [decedent] from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to [her] at the time of its execution and to give effect to that intent unless some positive rule of law forbids" (quotation omitted).  Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 84 (2008).  "Although the interpretation of a will begins with the four corners of the instrument . . . it does not necessarily end there."  Id.  If the terms of the will are ambiguous, the court may consider "extrinsic evidence of facts known to the [decedent] and in light of which [the decedent] viewed the ambiguous language" (quotation omitted).  Id. at 85.

The third clause of the decedent's will states:

"I grant my sons, David . . . and Derek . . ., the right to use and occupy my property located at 21 Sunset Strip, Mashpee, MA.  Said occupant(s) will be responsible for

8

necessary maintenance, real estate taxes, utilities and insurance expenses on the property while occupying the property.  Should neither David . . . nor Derek . . . choose to live in the home, all such costs would be divided equally between them.  If either decides to sell the property, then the other must be given the opportunity to purchase his brother's share in the home at either a mutually agreed upon price, or if a price cannot be agreed upon, then at fair market value as determined by a licensed, independent real estate appraiser.  If the other is unwilling or unable to purchase his brother's share, then the property shall be sold and the proceeds will be split equally between David . . . and Derek . . ., per stirpes [emphasis omitted]."

We begin by recognizing that a conveyance of property to two or more people is presumed to be a tenancy in common unless otherwise expressed by the decedent.  See G. L. c. 184, § 7.  Although the decedent granted both David and Derek an interest in the property, it is not clear from reading clause three whether that interest is a life estate, a tenancy in common, or some other lesser right to use and occupy the property.  David argues that the third clause is unambiguous and created a tenancy in common.  While we agree that the decedent did not use the typical language associated with the grant of a life estate, such as conveying the property "for life" or "until the death" of the beneficiary, courts have held that the absence of those words does not foreclose the possibility that a life estate was still created.  Hershman-Tcherepnin, 452 Mass. at 87-88.  We also note that the decedent did not use the words "bequeath" or "devise" when referencing the property's title; rather, she used

9

the words "the right to use and occupy." The decedent further provided that whoever resided at the property was required to pay taxes and insurance and perform necessary maintenance. This language is more suggestive of the creation of a life estate or perhaps a lesser right of use and occupancy. See Hesseltine v. Partridge, 236 Mass. 77 (1920). See also Hershman-Tcherepnin, 452 Mass. at 91 ("'right to remain' language gave the wife not an estate in the property but a right or privilege not to be excluded from the home"). The next two sentences of this clause, which we read in harmony with the first two sentences, provide that if neither David nor Derek chooses to live in the home, then the costs will be split equally, and if one of them decides to sell, the other has the right to purchase his brother's share. Although David argues that the grant of a power to sell demonstrates the decedent's intent to convey fee simple interests, it is unclear from these two sentences whether the power to sell can be exercised at any time, or only if neither brother chooses to live in the home. Again, this language is ambiguous as to the type of interest created in the property.

Because a genuine issue of material fact exists as to the intent of the decedent about the property bequeathed, the grant of summary judgment must be vacated.

3. Promissory estoppel. Because we are remanding the case, we take a moment to discuss Derek's claim for promissory estoppel. The judge dismissed Derek's promissory estoppel claim for several reasons. First, she found that Derek's promissory estoppel claim was based on a theory that David's daughter exerted undue influence on the decedent to execute a will that was more favorable to David. The judge concluded that summary judgment was in order because Derek did not file the equity action within the required time period to contest the will by a claim of undue influence. Second, the judge found that even if the promissory estoppel claim was based upon David's alleged promise to allow Derek to live at the property for the rest of his life, Derek's reliance was unreasonable and in conflict with the probate filings. Third, the judge found that the statute of frauds barred Derek's recovery; and, fourth, that the filing of the promissory estoppel claim also triggered the in terrorem clause because it "indirectly attempts to oppose the validity of the will."

As discussed above, Derek's claim of promissory estoppel was not based on a theory of undue influence and did not trigger the in terrorem clause. Derek's claim is based on a separate alleged promise by David that Derek could remain at the property for the rest of his life. On remand, if there is a determination that Derek and David were granted a tenancy in

11

common in the property, the issue of whether David later promised Derek a life estate remains a disputed issue of fact and one that cannot be resolved on the present record.

Conclusion. Because the will's in terrorem clause was not triggered and the language of clause three in the will was ambiguous, we vacate (1) the orders, entered December 24, 2024, denying Derek's motions for reconsideration; and (2) the judgment and decree of dismissal entered December 4, 2024. The case is remanded for further proceedings consistent with this memorandum and order.[3]

So ordered.

By the Court (Desmond, Shin & Walsh, JJ.[4]),

*Paul Little*

Clerk

Entered: December 18, 2025.

---

[3] We deny both parties' requests for awards of their respective appellate attorney's fees; costs shall be taxed pursuant to Mass. R. A. P. 26 (a), as appearing in 481 Mass. 1655 (2019).

[4] The panelists are listed in order of seniority.